**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**



UNITED STATES OF AMERICA,

                          **REPORT AND**
                          **RECOMMENDATION**
                          **09-CR-6016**

v.

CHRISTOPHER RIZZO,

       Defendant.

_____

## Preliminary Statement

Defendant Christopher Rizzo is charged in a seven count indictment with various federal criminal offenses involving the distribution of marijuana, including possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), using and maintaining premises for purposes of manufacturing, distributing and using marijuana in violation of 21 U.S.C. § 856(a) and conspiring with others to grow and distribute marijuana in violation of 21 U.S.C. § 846. Rizzo is also charged with possession of a firearm in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1) and (2).

Before the Court are motions by defendant Rizzo to suppress evidence. (Dockets #31). Specifically, defendant seeks to suppress evidence derived from two separate search warrants, as well as suppression of statements he made to law enforcement on September 15, 2008 and February 10, 2009.

**Relevant Facts**

A. **Motion to suppress the search warrants**: Rizzo seeks to suppress evidence seized from the search of the downstairs apartment of a dwelling located at 68 Parkdale Terrace in the City of Rochester. The downstairs apartment was searched twice. The first search occurred on September 15, 2008 and was authorized by Monroe County Court Judge Alex Renzi. See Exhibit "C" annexed to Docket #31. The second search was conducted on February 10, 2009 and was authorized by United States Magistrate Judge Marian Payson. See Exhibit "D" annexed to Docket #31. As to each search, Rizzo contends that the evidence submitted to the judicial officer authorizing the search was insufficient to establish probable cause.

1. **The September 15, 2008 Search Warrant**: The September 15 search warrant was based on the supporting affidavit of Rochester Police Investigator David Giudici. In his supporting affidavit, Giudici stated that on July 22, 2008 a confidential informant (CI) previously found to be reliable made a controlled purchase of three quarters of a pound of marijuana from Anthony Rizzo in the upstairs apartment of 68 Parkdale Terrace. According to Giudici, the CI was present in the kitchen of the upstairs apartment when Anthony Rizzo retrieved the marijuana from an oven drawer. Upon obtaining the marijuana, the CI paid Anthony Rizzo $300 from funds which had been supplied to the CI by Giudici. The CI left the apartment and

2

immediately returned to meet with Giudici and handed over the marijuana. On August 25, 2008, the CI called Giudici and informed him that earlier in the day he had again been in the upstairs apartment of 68 Parkdale Terrace with Anthony Rizzo. During his visit the CI observed Rizzo with a large plastic bag containing marijuana. The CI told Giudici that Anthony Rizzo "spoke about selling marijuana." On September 15, 2008, the CI again called Giudici and told him that earlier in the day he was present in the <u>downstairs</u> apartment of 68 Parkdale Terrace with Anthony Rizzo and observed Rizzo with a large plastic bag containing marijuana. The CI also told Giudici that he observed multiple empty plastic baggies as well as plastic baggies of assorted sizes containing what the CI believed to be marijuana. The CI reported to Giudici that Anthony Rizzo told the CI that he was now residing in the downstairs apartment with his mother Joy Emmick. Finally, the CI also informed Giudici that "on a recent visit" to 68 Parkdale Terrace, the CI was in a basement bedroom that was part of the downstairs apartment and observed a semi-automatic rifle.

2. <u>The February 3, 2009 Search Warrant</u>: The February 3, 2009 search warrant was based on the supporting affidavit of ATF Special Agent Jane Baldassare. In her supporting affidavit, Baldassare essentially recounted (1) the July 22, 2008 controlled purchase by the CI from Anthony Rizzo in the <u>upstairs</u> apartment of 68 Parkdale Terrace, and (2) the CI's September 14, 2008 observations of Rizzo,

3

the packaged marijuana and the firearm observed in the <u>downstairs</u> apartment of 68 Parkdale Terrace as set forth in Investigator Giudici's earlier affidavit. Agent Baldassare also described the execution of the September 15, 2008 search of the downstairs apartment. Baldassare stated that 28 marijuana plants located in a hydroponic growing system as well as marijuana growing paraphernalia were found in the downstairs apartment. In addition, loose marijuana, packaged marijuana and a loaded rifle were also found in the basement of the downstairs apartment. Agent Baldassare further averred that "within the past two weeks," the CI had observed marijuana plants growing in the upstairs apartment. Finally, Baldassare stated that the CI had observed Anthony Rizzo utilize both the upstairs and downstairs apartments to manufacture, store and distribute marijuana. Based on Agent Baldassare's affidavit, Magistrate Judge Payson issued a search warrant for both the upstairs and downstairs apartments at 68 Parkdale Terrace.

**B. Motion to Suppress Statements**: The defendant has also moved to suppress statements he made to law enforcement on September 15, 2008 and February 10, 2009. An evidentiary hearing was held on July 22, 2009 and post hearing briefs were submitted by counsel.

<u>1. Statements Made on September 15, 2008</u>: The defendant was present at 68 Parkdale Terrace when the September 15, 2008 search warrant was executed and was taken into custody. After being

transported to the Special Investigation Office at the Public Safety Building, the defendant was interviewed by Investigator Giudici. Upon entering the interview room, Giudici introduced himself, obtained pedigree information and asked Rizzo if he was under the influence of drugs or alcohol. After determining that Rizzo was able to communicate Giudici advised Rizzo of his Miranda rights by reading them verbatim from the Rochester Police Department's Notification and Waiver Warning form (Hearing Exhibit "1"). After advising Rizzo of his rights, Giudici asked Rizzo if he understood the rights and Rizzo answered "Yup". Before he was able to continue and ask whether Rizzo wanted to waive his rights and be interviewed, Rizzo asked Giudici what he was being arrested for. Giudici advised Rizzo that he was under arrest for possession of marijuana, conducting a "marijuana grow operation" and "possibly criminal possession of a weapon." Rizzo responded by telling Giudici that he "can't be arrested for a gun that you can purchase in a store" and then stated "I don't want to talk any more." Giudici continued to read off his RPD Rights Form and asked Rizzo "with these rights in mind, do you agree to talk with me now?" Rizzo answered "No". Giudici terminated the interview and left the room. Giudici testified that Rizzo was charged with possession of marijuana and unlawful growing of cannabis.

2. Statements made on February 10, 2009: On February 10, 2009 the federal search warrant was executed at 68 Parkdale

Terrace. The defendant was again taken into custody and transported to the Public Safety Building to be interviewed. The interview was conducted by ATF Agent Thomas Shelton. Shelton testified that prior to commencing the interview he was made aware of the prior search of 68 Parkdale Terrace but had no specific knowledge of any criminal charges pending against Rizzo. Prior to commencing the questioning of Rizzo, Shelton read the defendant his <u>Miranda</u> rights from a preprinted form (Hearing Exhibit "2"). As Agent Shelton was reading the rights form aloud, Rizzo interrupted him and said he was willing to be interviewed. Shelton told Rizzo that completing the advice of rights was important and Rizzo had to wait until Shelton finished reading the rights card before he could commence the interview.

After he completed reading the defendant his rights, Shelton asked Rizzo if he understood his rights and Rizzo said that he did. To confirm that the defendant understood the rights given to him, Agent Shelton asked Rizzo to sign his name to the rights form and Rizzo complied. Agent Shelton signed the form, noting the date of the interview and the time (1:48 p.m.). According to Shelton, the interview lasted approximately twenty minutes and Shelton made handwritten notes (Hearing Exhibit "4") during the interview. Rizzo discussed the September 15, 2008 search with Agent Shelton during the interview. At no time during the interview did the defendant request a lawyer.

6

After the interview was completed, Shelton reviewed his notes with Rizzo and asked Rizzo whether he was willing to give a written statement. Rizzo replied that "he was not interested in giving a written statement." Some time after the interview ended, Agent Shelton prepared and typed a "Report of Investigation" form (Hearing Exhibit "3").

The defendant testified briefly at the suppression hearing. Rizzo testified that the attorney who represented him on the state court charges filed after the September 15, 2008 search warrant was Dan Aureli. The government did not cross-examine the defendant.

## Discussion

A. Searches of 68 Parkdale Terrace: Rizzo seeks to suppress the evidence seized from the downstairs apartment at 68 Parkdale Terrace. The government does not contest Rizzo's standing to contest either search, as Rizzo occupied the downstairs apartment which included the basement. According to Rizzo, neither warrant application set forth sufficient probable cause to search the downstairs apartment.

Probable cause to search a dwelling "exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Ponce, 947 F.2d 646, 650 (2d Cir. 1991)(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "When the affidavit in support of the

7

search warrant is based on information obtained from a confidential informant, courts assess the information by examining the totality of the circumstances bearing upon its reliability." United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000)(citations and quotations omitted). It is well settled that courts conducting a review of a judge's decision to issue a warrant must pay "great deference" to the issuing judge's determination of probable cause. United States v. Smith, 9 F.3d 1007, 1012 (2d Cir. 1993).

I find that both search warrants were supported by probable cause to search Rizzo's downstairs apartment. As to the September 15, 2008 search, Rizzo's primary complaint is that the supporting affidavit detailed controlled drug purchases by the CI that occurred in the <u>upstairs</u> apartment and yet the search warrant sought authorization to search the <u>downstairs</u> apartment. It is true that the two controlled purchases of marijuana by the CI from Anthony Rizzo occurred in the upstairs apartment. However, on the day the search warrant was issued, Investigator Giudici learned from the CI that Anthony Rizzo was "now residing in the downstairs apartment" with his mother and that he had just been in the downstairs apartment with Anthony Rizzo and had seen marijuana, a scale and assorted sizes of plastic baggies used to package marijuana. This information was disclosed to Judge Renzi in Giudici's affidavit and provided sufficient facts for a finding that there was probable cause to believe that evidence of criminal

activity would be found in the downstairs apartment. See United States v. Miles, No. 05-CR-59A, 2006 WL 2403464, at *5 (W.D.N.Y. Aug. 18, 2006)(search warrant was supported by probable cause where confidential informant had personal knowledge of criminal activity which occurred in temporal proximity to warrant application).

Similarly, Agent Baldassare presented Judge Payson with sufficient facts for her to find probable cause had been established with respect to the February 3, 2009 search of the downstairs apartment. Agent Baldassare described the execution of the September 15, 2008 search warrant and informed Judge Payson that a hydroponic marijuana growing system as well as marijuana growing paraphernalia were found in the downstairs apartment. In addition, loose marijuana, packaged marijuana and a loaded rifle were also found in the basement of the downstairs apartment. Agent Baldassare further indicated that "within the past two weeks," the CI had observed marijuana plants growing in the upstairs apartment and that the CI had observed Anthony Rizzo utilize both the upstairs and downstairs apartments to manufacture, store and distribute marijuana. The totality of circumstances presented to Judge Payson supported a finding that both apartments at 68 Parkdale Terrace were being used by Anthony Rizzo to grow, package and distribute marijuana and that the criminal conduct continued even after execution of the September 15, 2008 search warrant.

Even assuming for the sake of argument that the warrant

9

applications were not supported by probable cause, "suppression of evidence obtained pursuant to a search warrant is an appropriate remedy only if law enforcement's reliance upon the search warrant was objectively unreasonable, i.e., the officer lacked objective good faith in the validity of the warrant." Miles, 2006 WL 2403464, at *5. Here, there simply is no basis for this Court to find anything other than that the officers had an objective good faith basis to rely on the search warrants issued by Judge Renzi and Judge Payson. United States v. Leon, 468 U.S. 897 (1984). Indeed, in seeking suppression, defense counsel makes no argument to the contrary. Accordingly, the remedy of suppression is not warranted.

B. Suppression of Statements: In his omnibus motions (Docket #31) Rizzo sought to suppress both his September 15, 2008 and February 10, 2009 statements to law enforcement on the basis that he was not sufficiently advised of his Miranda rights. A suppression hearing was held on July 22, 2009. In his post-hearing brief, (Docket #39), Rizzo seeks only to suppress his February 10, 2009 statement to Agent Shelton. Accordingly, this Report and Recommendation will address the admissibility of the oral statement Rizzo gave to Shelton during his post-arrest interview at the Public Safety Building.[1]

---

[1] To the extent Rizzo does challenge the admissibility of his September 15, 2008 statement to Giudici that he "can't be arrested for a gun that you can purchase in a store," it is my Report and

10

Citing <u>Michigan v. Jackson</u>, 475 U.S. 625 (1986), Rizzo argues that his February 10, 2009 statements to Agent Shelton were obtained in violation of his Sixth Amendment right to counsel and, hence, must be suppressed. In <u>Michigan v. Jackson</u>, the Supreme Court established the "bright-line" rule that forbids law enforcement to interrogate a criminal defendant once he has requested counsel at an arraignment or other similar proceeding. "[I]f police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." <u>Id.</u> at 636. Rizzo claims that once he retained an attorney after he was arrested and charged subsequent to the September 15, 2008 search of 68 Parkdale Terrace, his Sixth Amendment right to counsel had attached. As a

---

Recommendation that his motion to suppress be denied. First, based on the testimony of Investigator Giudici, I find that Rizzo was adequately advised of his <u>Miranda</u> rights. Second, and perhaps more importantly, I find that Rizzo's statement about the weapon was spontaneous and volunteered and not the result of any interrogation by Giudici. Rizzo interrupted Giudici's efforts to advise him of his <u>Miranda</u> rights and asked what charges were being filed against him. When Giudici answered, Rizzo spontaneously volunteered his view as to the legitimacy of the gun charge. Interrogation occurs when police engage in conduct that they "should know is reasonably likely to evoke an incriminating response from a suspect." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301-02 (1980). Giudici's response to Rizzo's question about the nature of the charges being filed was not a statement that was reasonably likely to result in an incriminating response. <u>Miranda</u> does not protect an accused from making a spontaneous admission. <u>Id.</u> at 300 (volunteered statements are admissible in evidence and are not subject to <u>Miranda</u> safeguards).

11

result, he could not be interrogated without counsel present when he was again arrested after the February 10, 2009 search of 68 Parkdale Terrace. Because the Sixth Amendment right is "offense specific," Rizzo devotes much of his argument to his assertion that the instant federal prosecution arose from and is tied to the September 2008 state prosecution. According to Rizzo, because the federal charges are for the "same offense" as the earlier state charges, his statements to Agent Shelton are barred by Michigan v. Jackson's bright line rule. See Memorandum of Law in Support of Suppression Motion (Docket #39) at pp. 4-6.

I need not devote any analysis to Rizzo's "same offense" arguments, because even if I adopted his views he would not prevail on his Sixth Amendment claim. For on May 26, 2009, the Supreme Court issued its decision in Montejo v. Louisiana, __ U.S. __, 129 S.Ct 2079 (2009), which abolished the bright-line rule of Michigan v. Jackson and instead made waiver of a criminal defendant's Sixth Amendment right to counsel co-extensive with a suspect's waiver of his Fifth Amendment right to counsel. In other words, so long as law enforcement did not violate Rizzo's Fifth Amendment right to counsel, they also did not violate Rizzo's Sixth Amendment right to counsel. In abandoning Michigan v. Jackson, the Court in Montejo reiterated the "three layers" of protection already afforded to a suspect under the Fifth Amendment:

> Under the Miranda- Edwards- Minnick line of
> cases (which is not in doubt), a defendant who

>does not want to speak to the police without counsel present need only say as much when he is first approached and given the Miranda warnings. At that point, not only must the immediate contact end, but "badgering" by later requests is prohibited. If that regime suffices to protect the integrity of "a suspect's voluntary choice not to speak outside his lawyer's presence" before his arraignment, it is hard to see why it would not also suffice to protect that same choice after arraignment, when Sixth Amendment rights have attached.

Id. at *2089-90 (internal citation omitted). Thus, the question here becomes whether, when measured under Rizzo's established Fifth Amendment right to counsel, law enforcement violated Rizzo's Sixth Amendment right to counsel. More specifically, did Rizzo ever indicate to law enforcement that he did not want to speak to them without counsel present?

When analyzed under well-established Fifth Amendment principles, it is clear that Rizzo's Fifth Amendment right to counsel was never violated because he never invoked it. The Supreme Court has long differentiated the consequences of a suspect invoking his right to remain silent and invoking his right to request legal counsel. See Michigan v. Mosley, 423 U.S. 96, 102, 104 n.10 (1975)(Miranda itself "distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney"). Determining whether Rizzo invoked his Fifth Amendment right to counsel is an objective inquiry and requires the Court to determine whether the suspect being

13

questioned "actually" and "unambiguously" requested counsel. Davis v. United States, 512 U.S. 452, 458-59 (1994). To invoke his right to counsel, Rizzo "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect" until counsel is present. Id. at 459. There is nothing in the present record that would allow the Court to make a finding that Rizzo unambiguously requested counsel. While being advised of his Miranda rights on September 15, 2008, Rizzo asked a question about the validity of the charges and then simply stated he did not "want to talk any more" and the interview terminated. Under any objective analysis, Rizzo's statement could not reasonably alert a police officer that Rizzo was requesting a lawyer.

Moreover, the police were free to re-initiate questioning after Rizzo was arrested again on February 10, 2009. As the Supreme Court ruled in Michigan v. Mosley, Miranda cannot "sensibly be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." 423 U.S. at 102-03. Instead, the court must focus its inquiry on whether the defendant's right to remain silent was "scrupulously

14

honored." See id. at 104. Relevant factors include: (1) whether the suspect was advised of his Miranda rights prior to initial interrogation; (2) whether the suspect was given a "fresh" set of Miranda warnings prior to the reinterrogation; (3) the length of time between the two interrogations; (4) whether the second interrogation was restricted to a crime that had not been the subject of earlier interrogation; and (5) whether the suspect's first invocation of rights was honored. See id. at 104-05.

Based on the totality of circumstances presented here, I find that Rizzo's Fifth Amendment right to remain silent was scrupulously honored. Miranda warnings were given to Rizzo prior to *both* the September 2008 and February 2009 interrogations. Rizzo's invocation of his right to remain silent was honored by Investigator Giudici during the September 15, 2008 interview. Over four months passed between the two interrogations, during which time Rizzo was out of custody and thus not in an inherently coercive environment. Finally, although the topics covered during the February 2009 interview conducted by Agent Shelton concerned the same topic as the September 2008 interview, it must be noted that the results of the two searches yielded similar evidence of criminal activity. In any event, the fact that there was some overlap in the subject matter police sought to question Rizzo about does not render information gleaned from the second interview inadmissible. See Santos v. Artuz, No. 99 CV 4614(RR), 2002 WL

718265, at *6 (S.D.N.Y. Mar. 8, 2002)(fact that police talked about the same crime in both interviews is not of "constitutional significance")(collecting cases).

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motions to suppress (Docket #31) be **denied**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated: November 12, 2009
Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).[2]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.
**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: November 12, 2009
Rochester, New York

---

[2] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).

17